AURORA FRUIT GROWERS ASSOCIATION, RESPONDENT, v. ST. LOUIS-SAN
FRANCISCO RAILWAY COMPANY, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed June 9, 1927.

1.—Carriers. In action to recover damages for loss sustained in shipment
of car of strawberries, evidence of negligent delay in movement of car held
insufficient to go to jury.

2.—Same—Not Insurer of Perishable Freight. Common carrier is not an
insurer of perishable freight, but its care is determined by character of
shipment and conditions obtaining.

3.—Same. In action for damages for alleged loss sustained in shipment of
car of strawberries, question whether car, which was iced to capacity before
loading, should have been reiced before car left shipping point, held for jury.

4.—Same—Bill of Lading—As Affecting Liability. Limitation, in bill of
lading covering car of fruit, of reicing car only at regular icing stations on
route, does not save carrier from liability for damages to shipment caused
by failure of carrier to exercise care required to reice in transit, since such
a limitation, to be valid, must be shown to be reasonable.

5.—Same—Shipment of Perishable Freight—Damaged in Transit—Measure
of Damages. Where fruit arrives at destination in bad condition on account
of carrier's negligent failure to ice properly, and was refused by consignee,
and reconsigned to another point, shipper's measure of damages held differ-
ence between value of shipment at original destination in its damaged state
and what it would have been if it had arrived in good condition; this amount
to be reduced by net amount received for shipment.

*Corpus Juris-Cyc. References: Carriers, 10CJ, p. 92, n. 98; p. 93, n. 3;
p. 154, n. 86; p. 305, n. 61; p. 391, n. 30; p. 396, n. 77; p. 403, n. 66.

Appeal from the Circuit Court of Lawrence County.—Hon. Charles
L. Henson, Judge.

REVERSED AND REMANDED.

E. T. Miller and Mann & Mann, for appellant.

(1) The question presented here is whether or not appellant was
negligent in the handling of the car of berries, as appellant is not an
insurer of perishable freight and respondent can only recover by
showing that a loss was occasioned in its shipment of strawberries by
reason of negligence on the part of appellant, and respondent, in
showing such negligence, is confined to the grounds of negligence
as alleged in its petition. All the evidence taken together, failed
to show appellant guilty of either ground of negligence alleged, and
appellant's peremptory instruction should have been given. 10 Cor-

pus Juris 121, par. 148D; Gregory v. Railway, 174 Mo. App. 550; Tri-State Fruit Growers v. Railroad, 264 S. W. 445; Keithley & Quinn v. Nixon et al., 190 Mo. App. 458; Singer v. Express Co., 203 Mo. App. 158; Cloyd v. Wabash Ry. Co., 240 S. W. 885. (2) Respondent's instruction number 1, was erroneous in that it presumes and states as a fact that appellant did fail to properly ice the car and keep it properly iced in transit. Zini v. Railway, 235 S. W. 86; Glaser v. Rothschild, 221 Mo. 203-205; Coffey v. City of Carthage, 186 Mo. 583, 585. There was no evidence of probative force offered on behalf of respondent to the effect that there was any failure to properly transport this car, that is, that there was no evidence of any negligent delay which caused any damage to respondent, and if this is true such ground of negligence should not have been, and was erroneously submitted to the jury in this instruction. The same applies as to the other ground of negligence, that is, that appellant failed to properly ice the car, and therefore if the court holds that the respondent failed to prove either or both of these matters, then this instruction was erroneous. Kuhn v. Lusk, 281 Mo. 324. This was an interstate shipment, and in order for respondent to recover it was necessary to prove negligence on the part of appellant in order to recover, and mere delay, even if unusual, would not necessarily be negligent. Further, respondent alleged negligent delay in its petition, and it was, therefore, bound to prove a negligent delay. Gregory v. Railway, 174 Mo. App. 550; Tri-State Fruit Growers' Ass'n v. Railway, 264 S. W. 445; Keithley & Quinn v. Nixon et al., 190 Mo. App. 458; Singer v. Express Co., 203 Mo. App. 158; Writ of *Certiorari* denied in Singer v. Express Co., 254 U. S. 632; Johnson v. Railway, 211 Mo. App. 564; Mason v. Railway, 247 S. W. 243; Bland v. Railway, 232 S. W. 232; Neely v. Hines, 206 Mo. App. 621. The same thing applies wherein the jury are told that they may find for respondent if the car was not "properly" iced, whereas the jury should have been required to find a negligent failure to ice. Lastly, this instruction is wrong in that it is broader than the issues made by the pleadings. Two specific acts of negligence are charged in respondent's petition. Negligent delay, and negligent failure to ice; and if respondent is to recover, it must be on one of the grounds alleged. This instruction goes further and charges appellant not only with the duty to move the car without delay and to ice the car, but also allowed the jury to return a verdict for respondent if the car was not properly "refrigerated." Under such instruction the jury very properly found that the mechanical condition, or the construction of the car was such as to prevent proper refrigeration, and so found against appellant, or that for some other reason other than negligent failure to ice the car, the car of berries was not properly refrigerated. Keithley & Quinn v. Nixon, 190 Mo. App. 458. (3) Respondent's instruction number 2 was erroneous for the reason

there were no facts in evidence on which to base same. In the first place, and granting for the sake of this argument, that the berries were negligently delayed and negligently not iced, there is no competent evidence in the record as to what the market value of the berries would have been on their arrival at Cleveland had they arrived when they should have arrived. The only evidence of the value, or market value of these berries at all, before the damages occurred, was that they "sold for $5 per crate on the track at Aurora." We submit that such evidence should not have been admitted, and in any event it in no way tended to prove the market value at Cleveland, a large city a great distance from the small town of Aurora. Undertaking Co. v. Jones, 134 Mo. App. 101; Cope v. C. P. Thurston, 147 Mo. App. 684. As to the balance of the instruction, the record does not even disclose an attempt to prove what the market value of these berries was at the time they reached Cleveland in the condition they were then in. This instruction presumes and states as a fact that the car was negligently delayed, that is, that the car did not arrive when it should have arrived, and in this it is further erroneous. Zini v. Railway, 235 S. W. 86; Glaser v. Rothschild, 221 Mo. 205; Coffey v. City of Carthage, 186 Mo. 583. (4) In this case as one ground of negligence respondent alleges a negligent delay in transporting the car of berries. The burden is on the respondent throughout to prove this, and a mere showing of delay is not sufficient to sustain the burden of proving a negligent delay. 10 Corpus Juris, 287; Johnson v. Mo. Pac. Railway, 211 Mo. App. 564; Mason v. Railway, 247 S. W. 243; Bland v. Railway, 232 S. W. 232; Neeley v. Hines, 227 S. W. 650, 206 Mo. App. 621; Harrison v. Railway, 239 S. W. 871; Stroud v. Railway, 236 S. W. 891. (5) Respondent for its one other ground of negligence alleged a negligent failure to ice the car by keeping the ice bunkers sufficiently full of ice to produce refrigeration. In this case it was only necessary for appellant to ice the car at its nearest regular icing station to the point of loading prior to the loading of the car and to thereafter ice such car along the route at the regular maintained icing stations. 10 Corpus Juris 93; Wright v. Railway, 163 S. W. 1151. (6) That it was only necessary for appellant to move the car of berries according to its regular published schedule and the regular published and maintained schedule of its connecting carriers in order to be free from the charge of negligently delaying the car. 10 Corpus Juris 287; Hickey v. Railway, 174 Mo. App. 408. (7) That a shipper does not have the right to divert, or change the destination of a car after it has reached its original destination so as to hold the initial carrier for loss occurring thereafter. Smith & Sons v. Railroad, 177 Mo. App. 269; Melbourne v. Railway, 6 So. 762; Railway v. Enterprise Oil Co., 101 So. 605. (8) That a presumption

exists that damage to a shipment, if any, moving over a number of railway lines, discovered at the end of the haul was caused by the last or terminal carrier. Bockserman v. Railway, 169 Mo. App. 168; Keithley & Quinn v. Nixon, 190 Mo. App. 458. (9) That the instructions and the evidence cannot be broader than the pleadings, is a proposition so elementary that it needs no supporting authorities. (10) That evidence of what the car of berries sold for and that such was the market price at Aurora, Missouri, is not competent as tending to show what the market value of these berries would have been at Cleveland, Ohio, had they arrived there without any delay or negligence on the part of appellant, as alleged by respondent, nor was the price the berries sold for at Buffalo, New York, competent as tending to prove the market value of the berries at Cleveland, Ohio, in the condition they were in when they reached such point. Undertaking Co. v. Jones, 134 Mo. App. 101; Cope v. C. P. Thurston Co., 147 Mo. App. 684; Smith & Son v. Railroad, 177 Mo. App. 269; Railway v. Enterprise Oil Co., 101 So. 605. (11) When so requested the court should withdraw from the consideration of the jury, those acts of negligence, which are not supported by the evidence. Crone v. Railway, 236 S. W. 654; Higgins v. Pulley Co., 240 S. W. 252; Latham v. Hosch, 233 S. W. 84. (12) A stipulation in a bill of lading limiting the liability of the carrier, or the service, or care, the carrier is to give the goods being transported is valid. In this case it was a part of the bill of lading, written on the face thereof, that the car of berries was to be given "stated refrigeration." The undisputed testimony is that this meant that the car was to be reiced to capacity at the regular icing stations along the route of shipment, no more and no less. The testimony is then also undisputed, and therefore must be taken as true, that this car was iced to full capacity at every regular icing station along the route of shipment. We submit that appellant under the evidence cannot be held liable for a negligent failure to ice and that appellant's instruction Number "D" should have been given. C. C. C. & St. L. Ry. Co. v. Dettlebach, 60 Law Ed. 453, 239 U. S. 588.

*Bloss & Walker* for respondent.

(1) The court did not err in submitting to the jury the issue of delay, as well as that of proper refrigeration, under the testimony in this case. R. E. Funston Dried Fruit & Nut Co. v. Railroad Co., 163 Mo. App. 426; Thompson v. Railroad Co., 117 S. W. 1193; Vincill v. Railroad Co., 112 S. W. 1033; Cudahay Packing Co. v. Railroad Co., 187 S. W. 149; St. Louis, I. M. & S. R. R. Co. v. White, 103 S. W. 673, 679; C. C. Taft v. Express Co., 133 Iowa, 522, 110 N. W. 897. Neither was there error in submitting the issue, to the jury, of a lack of proper

refrigeration to preserve the berries while in transit. C. C. Taft Co. v. Amr. Express Co., 132 Iowa, 522, 110 N. W. 897; Penn. R. R. Co. v. Orem Fruit Co., 111 Md. 536; Johnson v. Toledo R. R. Co., 133 Mich. 596, 95 N. W. 724, 103 Amr. S. R. 464; Brennison v. Penn. R. R. Co., 100 Minn. 102, 110 N. W. 362; St. Louis R. R. Co. v. White, 103 S. W. 673. Icing is not a mere incident to the transportation service but is a part of the service itself; and a railroad company which holds itself out as a carrier of a commodity which can only move under refrigeration is in duty bound to furnish that refrigeration. Refrigeration case, 11 Interstate Com. Comm. R. 129. (2) Bearing on the contention of the defendant that respondent's instruction number 1 told the jury that the defendant had failed to ice the car properly, etc., we do not regard the instruction subject to this criticism because the court told the jury that, unless they found these things, unreasonable delay or failure to ice, then they must find for the defendant. Ellis v. Metropolitan St. R. R. Co., 234 Mo. 657; Schaaf v. St. Louis Basket & Box Co., 151 Mo. App. 35; Opinion adopted, 140 S. W. 1197; Crumm v. Crumm, 231 Mo. 626. Again it has many times been held that the instructions must be taken as a whole and where the plaintiff's instruction omits some necessary element and the same is supplied in the instruction of the defendant, as was the case here in instruction number 3 given for the defendant, where the jury are told that they must find the failure to ice and the delay if any, must be found to be negligent, hence if it was necessary to state a negligent failure to ice, etc., the instructions as a whole required the jury to do this. Campbell v. Hoosier Stave & Lbr. Co., 146 Mo. App. 681; Senn v. Railroad Co., 135 Mo. 512; Spillane v. Mo. Pac. R. R. Co., 111 Mo. 555. There is no merit in the contention that this instruction goes further than the petition in submitting icing and refrigeration. The petition charges that the defendant failed to keep ice in the bunkers to produce refrigeration. The case of Keithley & Quinn v. Nixon, is not at all in point. There the charge was that the ventilators were allowed to become closed contrary to instruction. (3) The next contention is that there is no evidence to support the instruction on the measure of damages. The evidence of Mr. Rogers is that these berries were sold to K. B. Pocock of Cleveland for $5 per crate. The sale was made at Aurora but the berries were to be delivered at Cleveland and plaintiff was to have received the $5 per crate net, providing the car arrived at Cleveland on the 28th, for Saturday's market; this was evidence of the market value of the berries on the Cleveland market had the berries arrived when they should. Penn. R. R. Co. v. Orem Fruit Co., 111 Md. 356, 73 A. 471; Gulf, etc., R. R. Co. v. Mathews (Tex.), 76 S. W. 607; Yazoo, etc., R. R. Co. v. Peeples, 106 Miss. 604, 64 S. W. 262. The evidence in this case as to the market value of the berries when they

did actually arrive, was that the markets had closed and there was no market for these berries at Cleveland at all. This made their actual sale price at time they should have arrived competent to prove the market value. 10 C. J. 387 and citations; Clements v. Burlington R. R. Co., 74 Iowa, 442, 38 N. W. 144; Lightfoot et al. v. Frisco, 126 Mo. App. 532, 104 S. W. 482, 484; C. J. 402, sec. 619 and citations. (4) If it be conceded that the burden of showing a negligent failure to properly ice this car is on the plaintiff our contention is that this duty was fully met when we showed these strawberries loaded in good sound marketable condition; that appellant had used the icing station at Aurora in case of emergencies, and that the bunkers of their car were half empty when loading was finished and when the car got to Springfield it was three-fourths empty, or nearly so, it requiring 6000 pounds to fill the bunkers, and the temperature was around seventy to seventy-five. (5) The next contention of the appellant was to the effect that there was no showing of negligent delay because their schedule showing was that the car was taken on the regular schedule trains. We have gone over this evidence in our statement. The evidence is there set out. The authorities make evidence of the usual time consumed in transportation of this class of freight by experienced persons, competent and Mr. Rogers and Mr. Walsh both swore that three days was the usual time. The appellant offered no explanation as to why this car of perishable fruit was left in the Lindale Yard of Cleveland from one A. M. until the market of that day had closed, viz.: for six hours and ten minutes. Appellant knew this was Saturday and that if the berries were not then disposed of, there would be no market until the following Tuesday, Sunday and Decoration Day intervening. If the car had taken the usual time it would have gotten to Cleveland on the 27th, as testified to. This was negligent delay. (6) We do not take issue with the point raised by appellant to the effect that the shipper does not have the right to divert the car from the original destination unless there is a further contract authorizing it, so as to hold the initial carrier, but the showing here was, that by doing this, and sending the car to Buffalo, the defendant's loss would be reduced. This was not only the right of the plaintiff but it was its duty so to do. Lightfoot v. Frisco, 126 Mo. App. 532, 104 S. W. 484; 10 C. J. 402; Ft. Worth, etc., Co. v. Jordan (Tex.), 155 S. W. 676. We have cited the authorities on this proposition under point five. We merely want to add here, that this evidence showed that when the berries actually did arrive there was no market for them at Cleveland and, it became the duty of the plaintiff to make the best disposition of them that it could, and having done this it was competent, as bearing on their value, to show the receipts obtained and the credit given in reduction of this damage. The Queen, 78 Fed. 155 (Affirmed), 94 Fed. 180; Magdenberg Ins. Co. v. Paulson, 29 Fed. 530; Strauss v. Rail-

road Co., 17 Fed. 209; Little Rock R. R. Co. v. Miller Coal Co., 66 Ark. 645. (7) We have called the court's attention to decision of the Interstate Commerce Commission, which rules that refrigeration as to perishable freight is as much the common-law duty of the carrier as it is to move the freight. Suppose defendant had only one icing station in this distance of Aurora to Cleveland and berries could not be carried at all safely. It is bound to perform the service of refrigeration to the extent of preserving the berries and there being no consideration to support any reduced service, these words would not relieve it. Peters v. Amr. Express Co., 256 S. W. (Mo. App.) 100; George v. Chicago R. R. Co., 214 Mo. 551; Kellerman v. Kansas City R. R. Co., 136 Mo. 177; 10 C. J. p. 151, and many citations.

BRADLEY, J.—This is an action to recover $1825.26 as damages for an alleged loss sustained in a shipment of a car of strawberries from Aurora, Missouri, to Cleveland, Ohio. The cause was tried to a jury resulting in a verdict and judgment for plaintiff for $800, and defendant appealed. We heretofore filed an opinion in this cause reversing and remanding but granted a rehearing.

It is alleged that defendant negligently failed to properly ice the car and that the car was negligently delayed in shipment. Defendant answered by a general denial.

Error is assigned (1) on the refusal of defendant's peremptory request for a directed verdict at the close of the case; (2) on the instructions; and (3) on the admission of evidence.

What we may term the demurrer raises two questions, viz.: (1) Was there substantial evidence tending to show that the car was unreasonably delayed in shipment; and (2) did defendant discharge its duty relative to icing the car? These questions are related, but we shall consider them separately.

May 23, 1921, plaintiff ordered the car in which the berries were shipped. The car was iced to full capacity, 8500 pounds, at Monett, a short distance from Aurora, at four thirty-five A. M. on May 24th, and was set for loading at eight A. M. at Aurora on same day. Loading started at ten A. M.; was completed at ten P. M., and car was billed out at ten-thirty P. M. May 24th. The car moved out of Aurora at one A. M. and arrived at Springfield at five twenty-five A. M. May 25th. It was set at Springfield for reicing at seven A. M., was reiced, 6000 pounds being used to fill to capacity, by seven-thirty A. M., and moved out of Springfield at nine thirty-five A. M. May 25th. The car arrived at St. Louis at eleven-thirty P. M. May 25th, and was delivered to the Terminal Railroad Association at one A. M. May 25th, and was reiced at East St. Louis at seven A. M. same date, 4200 pounds of ice being used to fill to capacity. The car was

delivered to the Big Four railroad at four-forty P. M. May 26th and moved out of East St. Louis at seven-ten P. M. same day. It arrived at the icing platform at Indianapolis at six A. M. May 27th, and was reiced to capacity between six and seven A. M., 2000 pounds of ice being used, and moved out of Indianapolis at eight thirty-five A. M. on same day, May 27th. The car arrived at Lindale Yards, Cleveland, Ohio, the destination point, at one-fifty A. M. May 28th and was placed on the unloading track at six A. M., and the consignee notified, according to defendant's evidence, at eight A. M. same day.

Thomas L. Walsh, inspector for the consignee, K. B. Pocock, inspected the car about one-half hour after he was notified on May 28th that the car was on the unloading track. The berries were not in satisfactory condition to inspector Walsh and he refused to accept the delivery. After the consignee refused to accept the delivery the car was reiced and reconsigned by plaintiff or at its direction to National Fruit and Produce Company at Buffalo, New York, where the berries were sold netting plaintiff only $274.74.

We stated above that inspector Walsh was notified about eight A. M. May 28th that the car was on the unloading track at Cleveland. Walsh testified that it was "nearly noon" when he inspected, and that he inspected the car about one-half hour after he was notified. For the purposes of the demurrer then it is fair to say that the consignee was not notified that the car was ready for unloading until about eleven A. M. May 28th.

This car moved out of Aurora at one A. M. May 25th and arrived at St. Louis at eleven-fifty P. M. same day, one hour and twenty minutes behind schedule, being due in St. Louis at ten-thirty P. M. The car was billed at Aurora to go over the Big Four from East St. Louis. It moved out of East St. Louis over the Big Four at seven-ten P. M. May 25th on the first train that was available for this car after it arrived in St. Louis. This train left East St. Louis ten minutes behind schedule, being due to leave at seven P. M. The car arrived at Cleveland at one-fifty A. M., one hour and forty-nine minutes behind schedule, being due at twelve-one A. M. Certainly no negligent delay in the movement of this car of berries from Aurora to Cleveland can be sustained under this record.

But plaintiff contends that there was a delay in handling the car after it arrived in Cleveland. Had the car arrived in Cleveland at twelve-one A. M. May 28th, on time, it would have been ahead of the closing of the main market on that day only five hours and fifty-nine minutes. During this time the car had to be set for unloading and the consignee notified, and the berries disposed of, as the main market closed at six A. M. If it be assumed that the car could have been set for unloading prior to six A. M. there is not a word of evidence that the consignee had any place of business at which he could

have been notified in time to have disposed of these berries prior to six A. M.

Plaintiff offered some evidence as to what some witness or witnesses *thought* about the movement of this car of berries, but we have stated the movement as shown by the records of its movement which records in part were introduced by plaintiff. We are clear that there is no substantial evidence in this record tending to show that there was any negligent delay in the movement of this car of berries, therefore it was error to submit the question of negligent or unreasonable delay.

Is there any substantial evidence that defendant was negligent respecting the icing? The car was iced to capacity, 8500 pounds, at Monett at four thirty-five A. M. May 24th. Loading was not completed until ten P. M. that day, and the car was not reiced until between seven and seven-thirty on the morning of the 25th. From the time the car was first iced at Monett until it was reiced at Springfield approximately twenty-seven hours elapsed. It took 6000 pounds of ice to fill to capacity when reiced at Springfield. Or to state the ice condition otherwise there were only 2500 pounds of ice in the bunkers when the car was reiced at Springfield. Plaintiff introduced evidence tending to show that under the weather conditions then prevailing and the number of crates loaded this car should have been reiced prior to the time it was reiced at Springfield. The evidence tended to show that such depletion of ice brought the ice below the fruit line, and that invariably when such occurred "deterioration sets up in the fruit then above the ice in the bunkers." Also it was shown that when deterioration once begins it cannot be arrested except by actual freezing.

Defendant's liability, for the alleged failure to properly ice, depends upon two questions, viz.: (1) Was it the duty of defendant, under the facts, to reice the car at Aurora, if such reasonably appeared to be necessary? and (2) was it defendant's duty to reice the car, if such reasonably appeared to be necessary, at any place after it left Aurora, except at regular icing stations?

As stated plaintiff's evidence tended to show that the car should have been reiced prior to the time it was reiced at Springfield between seven A. M. and seven-thirty A. M. May 25th. Defendant contends that, under the facts, it is not responsible for the car not being reiced from the time it was iced at Monett at four thirty-five A. M. May 24th until reiced at Springfield between seven and seven-thirty A. M. May 25th. As stated approximately twenty-seven hours elapsed from the time the car was originally iced at Monett until it was reiced at Springfield. From the time the car was iced at Monett at four thirty-five A. M. until loading was completed, seventeen hours and twenty-five minutes elapsed. During this time the car was in the possession of plaintiff for twelve hours and thirty minutes, but

this possession should not be held to be exclusive, and according to this record it would seem that it was not exclusive. Defendant's agent at Aurora testified that at six o'clock P. M. the bunkers were something like half full of ice. This condition could not have been ascertained except by examination. Defendant recognized, by the examination made by its agent, that some duty devolved upon it respecting the refrigeration of the car during the loading period. But whether defendant recognized this duty or not it had a duty and it can escape liability only by showing that it discharged this duty, unless plaintiff assumed the duty of keeping defendant advised of the ice condition during the loading period and there is no evidence of such assumption in the record.

There is no dispute about defendant's duty to furnish a car suitable for the shipment of plaintiff's strawberries. It did furnish such car, but did its duty lapse, when it delivered the car to be loaded, until it was billed out by plaintiff? A common carrier is not an insurer of perishable freight, but its care is determined by the character of the shipment and the conditions obtaining. [Tri-State Fruit Growers Ass'n v. St. Louis-San Francisco Railway Company, 264 S. W. (Mo. App.) 445; Chicago & Alton Railroad Co. v. Davis, 42 N. E. (Ill.) 382, 50 Am. St. Rep. 143; Gibson v. Railroad, 124 S. W. (Ark.) 1033; 4 R. C. L. 728, 729, 730; 10 C. J. 92, 93; Dolan Fruit Co. v. Davis, 196 N. W. (Nebr.) 168, 32 A. L. R. 107; Pennsylvania R. Co. v. Walker et al., 128 Atl. (Md.) 45; Brennison v. Pennsylvania R. Co., 110 N. W. (Minn.) 362, 10 Ann. Cas. 169; Taft Co. v. American Express Co., 110 N. W. (Iowa) 897, 10 L. R. A. (N. S.) 614; Louisville & N. R. Co. v. Farmers Produce Co., 85 So. (Ala.) 578; Fort v. Denver & R. G. R., 195 Pac. (Colo.) 109.]

Tri-State Fruit Growers Ass'n v. St. Louis-San Francisco Railway Company, supra, concerned a shipment of strawberries in a refrigerator car. There we said: "Where a carrier agrees to transport goods in a refrigerator car, it impliedly undertakes to exercise such care and diligence as that class of goods requires, although the care and diligence required is greater than that required in the transportation of ordinary commodities (citing authorities). As a general rule, a carrier as to most commodities delivered to it for transportation is an insurer against all results incident to the transportation, except injuries resulting from the act of God, the public enemy, and the fault of the shipper, but it is only liable for deterioration in perishable goods in case of negligence."

Southern Railway Co. v. Williams, 77 S. E. (Ga.) 153, was an action to recover damages for the loss of a carload of peaches alleged to have been caused by the failure of the railroad company to properly ice the car in the first instance and thereafter to properly reice. In that case it appears that the initial icing was insufficient. This con-

dition was called to the attention of the agent of the railroad company by the shipper and the agent directed that the loading proceed and assured the shipper that the railroad company would furnish the ice. The shipper loaded, but the railroad company failed to furnish the ice and as a result the shipment was damaged. It was held that the carrier was liable.

In the cause at bar defendant's agent at Aurora at six o'clock P. M., according to his evidence, knew that the bunkers were only about half filled with ice, and he also knew that the car could not move out of Aurora prior to about one o'clock next morning. Had plaintiff called to the attention of the agent the condition of the ice it would have imparted no information that the agent did not already have. It was defendant's duty to exercise a reasonable degree of care as to the icing of the car and since it appears that defendant knew the condition of the ice at six o'clock P. M. on the day of the loading we are of the opinion that it would be unreasonable to say that plaintiff cannot recover because it did not advise defendant concerning a matter about which it already knew.

Johnson v. Railroad, 95 N. W. (Mich.) 724, 103 Am. St. Rep. 464, involved a shipment of peaches. The evidence tended to show that the cars were inadequately iced when furnished and that the shippers were not aware of the ice condition until the cars were loaded when it was too late for them to remedy the situation. On this question the court said: "Moreover, we are of the opinion that the alleged discovery that the cars were warm and insufficiently iced, before their departure, did not impose upon plaintiffs the responsibility, and relieve defendant from its obligation, if they had no opportunity to relieve the situation, or honestly believed the fruit would reach Greenville without injury. These were all proper questions for the jury."

Aurora was not a regular icing station, but the record shows that in emergencies cars were iced there. The bill of lading had stamped upon it "Under stated refrigeration." The evidence shows that the refrigeration designated means that the car was to be reiced to full capacity only at the regular icing stations maintained by defendant and its connecting carriers along the route the car moved from Aurora to destination. But such refrigeration concerns the icing after the car left Aurora and could not affect the duty to exercise due care to furnish sufficient ice to preserve the shipment from the loading point to the first regular icing station on the route. Hereinafter we consider the effect of the limitation upon refrigeration by the bill of lading.

Plaintiff's evidence tends to show that there was more ice in the bunkers when loading was finished than does defendant's evidence, but as stated the evidence tended to show that under the weather conditions then prevailing and the number of crates loaded this car

should have been reiced prior to the time it was reiced at Springfield. If such necessity could have been ascertained by the exercise of ordinary care under the circumstances defendant breached its duty in not reicing prior to the time the car was reiced at Springfield. As to whether the ice should have been replenished at Aurora is, we think, a question for the jury.  [Wright v. Midland Valley Railroad Co., 163 S. W. (Ark.) 1151.]

Was it defendant's duty to reice the car, if such was necessary, and such necessity could have been ascertained by the exercise of ordinary care, at any place after it left Aurora, except at regular icing stations on the route?  Plaintiff introduced no evidence tending directly to show that the ice subsequent to the reicing at Springfield was sufficiently depleted, considering the number of crates and the manner in which loaded, to bring the ice in the bunkers below the fruit line.  The number of pounds used at each icing, subsequent to the icing at Springfield, to fill the bunkers to capacity, was shown, but it was not shown that the ice ever got below the fruit line after the icing at Springfield.  There is nothing in the record to show definitely or even approximately what depletion of the ice would bring it below the fruit line in this car.  And were not another trial in prospect we would not further consider the question of icing subsequent to the icing at Springfield.  But in view of another trial we rule upon defendant's duty as to reicing subsequent to the reicing at Springfield.

Defendant's evidence shows, and there is nothing to the contrary, that the car while in transit from Aurora to destination was reiced to capacity at all regular icing stations.  If such icing service was all defendant was obligated to give while the car was in transit, regardless of the necessity for reicing, then the fact that the car may have needed additional icing while in transit would not be of consequence.  The question, therefore, is:  Did defendant discharge its full duty as to reicing in transit by reicing to capacity at all regular icing stations, there being no unreasonable delay in the movement of the car from Aurora to destination?  It is contended by defendant that the words "Under stated refrigeration" stamped upon the bill of lading defined defendant's duty as to reicing while the car was in transit and that it fully discharged this duty, and therefore, cannot be held liable for any damage that may have resulted to the shipment for lack of ice while the car was in transit.

To support the proposition that it was not required, regardless of necessity, there being no delay of consequence, to reice the car in transit, except at regular icing stations, defendant cites Wright v. Midland Valley Railroad Co., 163 S. W. (Ark.) 1151, cited supra, and Cleveland, Cincinnati, Chicago Railway Co. v. Dettlebach, 239 U. S. 588, 60 L. Ed. 453.  The Wright case concerned a shipment of

peaches from Greenwood, Arkansas, to New York City. The shipment was damaged because of alleged insufficient icing. There was no icing station at Greenwood, but the car was iced at the nearest station and moved to Greenwood for loading. The court instructed the jury that the railroad company "was not required to reice the cars at Greenwood, if the necessity to do so was caused by delay in loading the cars. But it was its duty to reice same as soon as it could, in the due course of its business, do so after the same was loaded and turned over to it." The jury found for the railroad company and on appeal the shipper challenged that part of the instruction telling the jury that the railroad company was not required to reice at Greenwood if the necessity to do so was caused by the delay of the shippers in loading. In disposing of the question the court said: "Here the car was loaded at Greenwood, and there was no icing station there. The cars, according to the testimony of the defendant, had been properly iced at the nearest station before they were sent to Greenwood and the court properly told the jury that the railway company was not required to reice the cars at Greenwood if the necessity to do so was caused by the delay of the plaintiffs in loading the cars. To hold otherwise would prevent shippers of fruit at stations where there was no icing plant from shipping out their fruit in refrigerator cars because the railroad company could not be required to keep icing plants at all of its stations."

The fifth headnote to the opinion in the Wright case as reported in the South Western Reporter is as follows: "Where peaches were shipped from a station at which there was no icing plant, and the railroad company properly iced the cars before furnishing them, it was not required to reice the cars at such receiving station after they were loaded."

It is apparent that this head does not accurately state what was in fact held in that the headnote omits the qualification respecting the delay in loading on the part of the shipper. We do not think the Wright case supports defendant's contention as to the effect of the limited refrigeration implied in the words "Under stated refrigeration" stamped upon the bill of lading. Rather do we think that the Wright case in effect holds that it is the duty of the carrier to reice, if necessary, at the loading point although such point is not a regular icing station, unless the necessity for reicing is caused by the shipper's delay in loading.

Cleveland, etc., Railroad Company v. Dettlebach, supra, concerned the validity of an agreed valuation of an interstate shipment and we do not think that case in point on the question in hand. There the shipper stated the value of the shipment at a sum much less than its actual value. The rate was lower on the value as stated than it would have been had the actual value been stated. It was held that the valuation placed on the shipment by the shipper was binding.

We find no case supporting defendant's contention that the limitation on refrigeration stamped on the bill of lading in this interstate shipment will save it from liability for damages to the shipment if such damage was caused by the failure of the defendant to exercise the care required to reice in transit.  Before such a limitation could be valid, it seems to us, it would have to be shown that it was a reasonable limitation.  If another trial is had and plaintiff offers evidence tending to show that the icing, after the car left Springfield, was insufficient, then, notwithstanding that there was no delay of consequence and notwithstanding that defendant reiced to capacity at all regular icing stations, the question as to whether defendant discharged its duty by the icing given in transit would be a proper question for the jury.

As stated, supra, it does not appear that the depletion of the ice after reicing at Springfield was such as to bring it below the fruit line.  In other words, there was no evidence tending to show that the icing in transit was not sufficient.  It is true that the shipment arrived at destination in a damaged condition and the evidence tends to show that this damaged condition was caused by insufficient refrigeration.  But so far as shown in the record before us the insufficient icing is confined to the period prior to the time the car was reiced at Springfield.  The evidence shows that plaintiff's berries were in good condition when loaded and in bad condition when they arrived at destination.  The fact that the shipment was in good condition when loaded and in bad condition at destination is a circumstance from which the inference of fact may be deduced that the refrigeration was not sufficient.  [M. K. & T. Co. v. McLean, 118 S. W. (Tex.) 161.]

We have endeavored to give the demurrer careful consideration and after doing so we think that it was properly refused.

Plaintiff asked and the court gave two instructions.  Both of these are challenged.  Since we have ruled that there was no evidence of negligent delay, plaintiff's main instruction will necessarily have to be recast.  And in doing so care should be observed to make it free from the criticism of assuming facts.  Plaintiff is relying upon the alleged negligence of the defendant to exercise due care to properly ice the car and to keep it properly iced, therefore, the instruction should predicate recovery upon the negligent failure to ice and not upon the mere failure to ice.

Plaintiff's instruction No. 2 is on the measure of damages.  This instruction will also have to be recast as it is based upon the theory that there was evidence of negligent delay.

Defendant in its formal assignments complains of the refusal of certain offered instructions, but makes no mention of these in the brief and argument.  Hence we may assume that the assignment based

220 Mo App.—84.

on the refusal of these instructions is abandoned. Defendant contends that there was incompetent evidence admitted to establish the market price of the berries in Cleveland. All of plaintiff's evidence in this respect was based on the theory that there was a negligent delay. There was no such delay, hence this evidence will not again be offered. Defendant only undertook to transport plaintiff's berries to Cleveland and did so without a delay of consequence. If plaintiff did not ship in time to get its berries on the Cleveland main market in time for disposition by six A. M. May 28th certainly defendant should not be held liable because the best market closed at six o'clock. .

Plaintiff's witness Walsh testified that had the berries arrived in Cleveland in good condition there would have been a market there for them on May 28th. If it is found that the berries arrived at Cleveland in bad condition on account of defendant's negligent failure to properly ice, then plaintiff's measure of damages would be the difference between the value of the shipment at Cleveland in its damaged state and what its value would have been if it had arrived in good condition. [Morrow v. Railroad, 265 S. W. (Mo. App.) 851, l. c. 854.] And this amount should be reduced by the net amount received by plaintiff for the shipment.

Evidence of the condition of the shipment when it was inspected in Buffalo could only be competent or relevant on the theory that the condition at Buffalo would tend to throw some light on the condition of the shipment at Cleveland. But the value of such evidence would depend upon the handling of the car as to icing and movement from Cleveland to Buffalo, and also upon the progress of decay of the berries after inspection in Cleveland. Plaintiff cannot contend that this evidence was competent *ex necessitate,* because inspector Walsh inspected the berries in Cleveland. We think that evidence as to the condition of the berries should, under the record here, be confined to their condition at Cleveland.

Defendant makes the point, that plaintiff is not a legal entity and can neither sue nor be sued, and urges this point under the assignment based on the demurrer. Plaintiff alleges that it is an unincorporated association. This is all that appears in the record as to the character of the association. This point was not raised below, but defendant contends that such point may be raised at any time, and cites Metropolitan Street Railway Company v. Adams Express Company, 145 Mo. App. 371, 130 S. W. 101. And to support the contention that plaintiff is not a legal entity defendant, in addition to the above case cites O'Rouke v. Kelly the Printer Corporation, 156 Mo. App. 91, l. c. 95, 135 S. W. 1011, and State ex rel. v. Stock Exchange, 211 Mo. 181, l. c. 190, 109 S. W. 675. What is now the seventh subdivision of section 1186, Revised Statutes 1919, was

added in 1915. Since that time the Kansas City Court of Appeals in Williams v. U. S. Express Company, 195 Mo. App. 362, 191 S. W. 1087, it would seem, has disapproved, at least in part, what was ruled in Metropolitan Street Railway Company v. Adams Express Company, supra. But, since the Williams case, section 1186a, Laws 1925, p. 137 has been passed, which we think would be pertinent.

If this cause is retried this question will likely be raised at the threshold and the facts, as to the character of plaintiff association, fully shown.

The judgment should be reversed and the cause remanded and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.